IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | EP-19-CR-2710-PRM |
| JOSE ALBERTO VALLE-PASILLAS<br>Defendant. | § § § § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS

On this day, the Court considered Defendant Jose Alberto Valle-Pasillas' [hereinafter "Defendant"] "Motion to Suppress Evidence" (ECF No. 70) [hereinafter "Motion"], filed on September 30, 2019, and the Government's "Response in Opposition to Defendant's Motion to Suppress" (ECF No. 72) [hereinafter "Response"], filed on October 8, 2019, in the above-captioned cause. Defendant asserts that his traffic stop and arrest were illegal, and all evidence "obtained therefrom" should be suppressed. Mot. 1. The Government contends that the traffic stop and arrest were constitutional based on sufficient reasonable suspicion and probable cause. After due consideration, the Court is of the opinion that Defendant's Motion should be denied for the reasons that follow.

## I. FINDINGS OF FACT

Defendant's Motion refences facts contained in "investigate reports provided by the Government," and introduces no additional facts. Mot. 1. Government's Response references facts contained in "reports of investigation, and interviews with witnesses," and states that "a complete and unredacted copy of the Investigate Report authored by DPS Trooper George Arellano [hereinafter "Trooper Arellano"] was delivered to Counsel for Defendant on August 12, 2019." Resp. 2. Thus, both Defendant's Motion and Government's Response are based on the same underlying facts contained in the Government's investigative report.

On July 26, 2019, at 10:14 a.m., Trooper Arellano was on routine patrol on Interstate Highway 10. Resp. attach. A at 15. The Government alleges that "the posted speed limit in this area is 80 miles per hour" and there are signs advising "Left Lane for Passing Only" which are "posted about every two to four miles." Resp. 2. Defendant argues that in the Government's investigative report "nothing suggest[ed] a sign existed at the time of the alleged offenses and or traffic infractions disallowing travel in the left lane." Mot. 2.

Texas state law provides that "[i]f, on a highway having more than one lane with vehicles traveling in the same direction, the Texas

Department of Transportation or a local authority places a sign that directs slower traffic to travel in a lane other than the farther left lane, the sign must read 'left lane for passing only.'" Tex. Transp. Code Ann. § 544.011. It also provides that "the operator of a vehicle or streetcar shall comply with an applicable official traffic control device [i.e., a sign] placed as provided by this subtitle." *Id.* § 544.004. Together, these provisions establish a traffic violation for failing to use the left highway lane for passing where designated as such.

Through his rearview mirror, Trooper Arellano observed a Black 2016 Cadillac Escalade [hereinafter "Black SUV"] traveling in the left lane of Interstate Highway 10. Resp. attach. A at 15. The Black SUV drastically decreased its speed and continued to travel in the left lane at 40–45 miles per hour. *Id.* Trooper Arellano observed that the Black SUV was impeding traffic. *Id.*

Traveling in the right lane in his patrol vehicle, Trooper Arellano pulled over to the side of the road to allow traffic to pass unimpeded. *Id.* The Black SUV passed him in the left lane of Interstate Highway 10 continuing to travel at 40–45 miles per hour. *Id.* Trooper Arellano identified that the Black SUV had a California Registration of 8JSM487. *Id.*

Trooper Arellano does not indicate in the Government's investigative report when he requested a records check on the California license plate. Resp. attach. A at 15. However, the Government asserts that at the time the Black SUV passed Trooper Arellano, he "requested a records check on the vehicle's California license plate," which, "revealed that the license tag had expired on June 20, 2019, over a month before the day in question." Resp. 2. Defendant asserts that it is "unclear at what point the trooper noticed that the plates were expired." Mot. 2.

Pursuant to the Texas Transportation Code, it is a traffic violation to operate a vehicle on a public highway "after the fifth working day after the date the registration for the vehicle expires." Tex. Transp. Code Ann. § 502.407. Now behind the Black SUV, Trooper Arellano activated his red and blue emergency lights and initiated a traffic stop for two traffic violations: "Drive In Left Lane When Not Passing or Where Prohibited (TXTRC 544.011; 544.004) and Operation of Vehicle With Expired License Plate (TXTRC 502.407)." Resp. attach. A at 15.

The Black SUV pulled over onto the unimproved shoulder of Interstate Highway 10 at mile marker 76. *Id.* Defendant indicates that the stop occurred at "an unknown mile marker" but offers no facts to support its assertion. Mot. 1. Immediately after the SUV stopped, a

4

group of eight individuals immediately exited the Black SUV and fled the scene on foot. Resp. attach. A at 19. The Black SUV then fled the scene at a high rate of speed, reportedly at over 100 miles per hour. *Id.* at 15. The driver of the Black SUV nearly hit a truck-tractor semi-trailer, cut off other vehicles, and drove on the shoulder of the road. *Id.* Next, the driver attempted to exit the highway but lost control of the vehicle and rolled multiple times. *Id.*

Trooper Arellano approached the Black SUV after the crash and observed the driver exit from the rear of the vehicle. *Id.* The driver fled on foot, and Trooper Arellano pursued him and made an arrest. *Id.* at 16. Trooper Arellano arrested the driver for a violation Texas Penal Code section 38.04(b)(1)(B), "Evading Arrest or Detention." *Id.* at 10. The driver of the vehicle was later identified as Defendant Valle-Pasillas. *Id.* at 15.

On September 11, 2019, Defendant was charged in a superseding indictment with transporting aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(ii). Super[s]eding Indictment, Sept. 11, 2019, ECF No. 47. Defendant now moves to suppress all evidence flowing from his traffic stop and arrest. Mot. 1.

5

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement 'through means intentionally applied.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis removed) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989); *Terry v. Ohio*, 329 U.S. 1, 19 n.16 (1968)).

"[P]olice must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, there are numerous exceptions to the general warrant requirement. Warrantless arrests may be permissible when "based on probable cause." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)). Warrantless temporary seizures, including traffic stops, are permissible on a showing of reasonable suspicion pursuant to *Terry v. Ohio*. *Terry*, 392 U.S. at 27. *See United States v.*

*Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (analyzing "routine traffic stops . . . as *Terry* stops.").

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (quoting *United States v. Roch*, 5 F.3d 894, 897 (5th Cir.1993); *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir.1977)). However, "[w]hen the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *Guerrero-Barajas*, 240 F.3d at 432.

## III. ANALYSIS

In the instant Motion, Defendant argues that his "traffic stop and arrest . . . was illegal and all evidence obtained therefrom should be suppressed under the fruit of the poisonous tree doctrine." Mot. 2. The Government asserts that there was reasonable suspicion for Defendant's traffic stop and probable cause for his arrest. Resp. 6, 10. After due consideration, the Court is of the opinion that the Government met its burden of establishing reasonable suspicion and probable cause.

Therefore, the warrantless traffic stop and arrest of Defendant were not in violation of his Fourth Amendment rights.

### A. Reasonable Suspicion for a Traffic Stop

Trooper Arellano had reasonable suspicion to make a traffic stop and apprehend Defendant because Defendant committed a traffic violation by failing to use the left lane of the highway for passing.

Traffic stops are "considered seizures within the meaning of the Fourth Amendment." *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). Because a traffic stop is often relatively brief and less invasive than an arrest, "[t]he legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (omitting citations). Pursuant to the two-prong *Terry* test, a Court will assess whether a traffic stop is "(1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (omitting quotations).

In order for a traffic stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* An objective reasonable suspicion is based on a

8

flexible, practical assessment of the "totality of the circumstances." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266 (2002)).

A traffic stop reasonably related in scope to its circumstances "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (citing *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)). In conducting the stop, a police officer may "examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen." *Id.*

In the case at bar, the traffic stop was justified at its inception based on reasonable suspicion. Trooper Arellano saw Defendant's vehicle traveling in the left lane, slow down to 40–45 miles per hour, and impede traffic. Considering these facts in their totality, the Court concludes that there is an objectively reasonable basis that Defendant failed to use the left lane for passing in violation of Texas Transportation Code sections 544.011 and 544.004. The Supreme Court and the Fifth Circuit have consistently held that similar, seemingly inconsequential traffic violations, even if used as a pretext, create reasonable suspicion for a traffic stop. *See Whren v. United States*, 517 U.S. 806, 808 (1996) (turning without signaling creates reasonable suspicion); *United States v.*

9

*Escalante*, 239 F.3d 678, 681 (5th Cir. 2001) ("weav[ing] across the divider lines at least twice" creates reasonable suspicion).

Second, the traffic stop was reasonably related in scope to its circumstances. Before Trooper Arellano reached Defendant's Black SUV to conduct the traffic stop, eight individuals exited Defendant's vehicle and fled on foot. Immediately afterward, Defendant fled the scene in the SUV at approximately 100 miles per hour. Thus, the duration of the original stop was reasonably related to the traffic violation because it was short, lasting perhaps less than a minute before new circumstances arose which justified additional action from law enforcement. *C.f. Lopez-Moreno*, 420 F.3d at 430 (permitting a check for license, registration, and warrants during a routine traffic stop).

Furthermore, the Court concludes that it is not relevant to the reasonable suspicion analysis whether a "Left Lane for Passing Only" sign was clearly posted in the area of the traffic stop. The Government indicates in its briefing that such a sign was posted every two to four miles in the area of the stop. Defendant fails to offer evidence contradicting this fact, but contends that "nothing suggests a sign existed at the time of the alleged offenses." Mot. 2. Defendant's argument follows that without a posted sign, the state cannot enforce a "Left Lane for

Passing Only" traffic violation pursuant to section 544.004 of the Texas Transportation Code.

Assuming, arguendo, that the highway had no "Left Lane for Passing Only" signs, Trooper Arellano still had reasonable suspicion to stop Defendant. A law enforcement officer's objectively reasonable mistake of fact is sufficient to create reasonable suspicion. *See Hill v. California*, 401 U.S. 797, 804 (1971) (upholding validity of mistaken arrest when officer reasonably mistook one party for another). Just as it is objectively reasonable for an officer to mistake one individual for another, it is also objectively reasonable for an officer to erroneously believe a common "Left Lane for Passing Only" sign has been posted and is in effect on a particular stretch of highway. *See id.* Therefore, it is not necessary to the Motion whether the signs were actually posted.

The Court is of the opinion that Defendant violating the traffic code for failing to use the left lane for passing created reasonable suspicion for the stop. Therefore, the Court does not reach the issue of whether there was an additional objectively reasonable basis for the stop due to Defendant's expired vehicle registration.

### B. Probable Cause for an Arrest

Defendant moves to suppress evidence because Defendant's

"arrest . . . was illegal." Mot. 1. However, the Court is of the opinion that there is probable cause for an arrest based on Defendant's unlawful conduct in the presence of law enforcement.

A warrantless arrest must be based on probable cause. *Zavala*, 541 F.3d at 575 (5th Cir. 2008). Probable cause depends on whether the "facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994). Although probable cause "requires more than a bare suspicion of wrongdoing," it also requires "substantially less evidence than that sufficient to support a conviction." *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996) (omitting quotations).

Having considered the facts and circumstances of the case at bar, the Court concludes that there was probable cause sufficient to arrest Defendant. The combination of a large group of individuals fleeing from a highway in broad daylight, coupled with illegal and dangerous driving, a vehicle crash, and the Defendant fleeing the scene of his accident, provides probable cause that Trooper Arellano believed an offense had occurred. While fleeing law enforcement alone is insufficient to create

probable cause, it may contribute to a factual analysis of the legality of law enforcement's conduct.[1] Therefore, the Court is of the opinion that Defendant's arrest did not violate his Fourth Amendment rights.

## C. Evidentiary Hearing

Defendant "prays that this Court will grant the Defendant an evidentiary hearing." Mot. 2. However, the Court is of the opinion that because Defendant makes conclusory allegations and fails to raise factual issues necessary to resolve his Motion, an evidentiary hearing is not required.

"[A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (omitting citations). Evidentiary hearings on motions to suppress are "designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *Id.* at 738. "Evidentiary hearings are not

---

[1] *See, e.g.*, *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995) ("in combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture."); *Zimmerman v. Cutler*, 657 F. App'x 340, 345 (5th Cir. 2016) (finding there was probable cause for an arrest due to "[Defendant's] flight together with [an] altercation").

13

granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *Id.* Factual allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* "General or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice." *Id.*

Defendant fails to raise nonconjectural factual issues warranting an evidentiary hearing. Despite receiving a detailed investigative report from the Government, Defendant asserts that "the facts that are basis for the stop are unclear and vague." Mot. 2. Defendant also asserts that the traffic stop occurred at an "unknown mile marker," when the Government's report indicates the encounter occurred at mile marker 76. *Id.* Presenting conclusory statements unsupported by independent facts and in direct opposition to the Government's evidence does not create factual issues requiring an evidentiary hearing. *See Harrelson*, 705 F.2d at 737 (finding that "conclusionary assertions . . . will not suffice.")

In addition, Defendant raises factual issues which are not necessary to resolve the case at bar. Defendant correctly states that it is unclear at what time Trooper Arellano identified that Defendant's license plate had expired. However, Defendant failing to use the left lane of the highway

14

for passing provides independent grounds for reasonable suspicion, allowing Trooper Arellano to permissibly stop Defendant irrespective of an issue surrounding an expired license plate.

Furthermore, Defendant alleges that "nothing suggests . . . traffic infractions disallowing travel in the left lane," in contrast to the Government asserting that the highway prohibited left lane travel due to posted signs stating "Left Lane for Passing Only." Mot. 2; Resp. 2. But it is irrelevant whether the signs existed so long as Trooper Arellano had an objectively reasonable expectation, or made an objectively reasonable mistake, that the signs were posted on the road.

Thus, the Court is of the opinion that Defendant did not meet his burden of raising specific, nonconjectural factual issues necessary to his Motion. Accordingly, no evidentiary hearing is required.

## IV. CONCLUSION

In sum, the Court determines that the suppression of evidence based on Defendant's traffic stop and arrest is inappropriate. The Government met its burden of establishing reasonable suspicion for Defendant's traffic stop and probable cause for Defendant's arrest. In addition, the Court determines that an evidentiary hearing is not warranted because Defendant fails to raise factual disputes necessary to the Motion.

Accordingly, **IT IS ORDERED** that Defendant Jose Alberto Valle-Pasillas's "Motion to Suppress Evidence" (ECF No. 70) is **DENIED**.

**SIGNED** this 11th **day of October, 2019**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE